## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

C&L CONSTRUCTION COMPANY, INC., et al.,

        Plaintiffs,

v.                           CIVIL ACTION NO.  2:04-0488

BB&T CORPORATION, et al.,

        Defendants.

### MEMORANDUM OPINION AND ORDER

Pending before the court is the defendant's Motion for Summary Judgment [Docket 14].  The court considered the motion, the plaintiffs' response, and the defendant's reply.  The court finds that a genuine issue of material fact exists and that the defendant is not entitled to a judgment as a matter of law.  Accordingly, defendant's Motion for Summary Judgment is **DENIED**.

## I.     Factual Background

The plaintiff is C&L Construction Company, Inc. (C&L). The defendant is Branch Banking and Trust Compay (BB&T).  C&L is a small family construction business originally started by Frank Moffitt (Frank).  Originally, Frank owned and controlled C&L.  Frank hired his two sons, Jeffrey D. Moffitt (Jeff) in 1976 and F. Douglass Moffitt (Doug) in 1977, to help run the business.  Eventually, Frank transferred about 18% ownership of C&L to Jeff, Doug, and his daughter Cindy Moffitt Brown.  Frank delegated all financial responsibilities of C&L to Jeff.  Jeff was solely responsible for bookkeeping, preparation of invoices, writing checks, and making deposits for the

business.  Since the time Jeff was given control of the financial responsibilities C&L maintained a depository account with BB&T.[1]

In December 1994, Jeff started embezzling large sums of money from C&L.  Jeff accomplished this by "stealing" checks made out to C&L from the company.  After "stealing" the checks, Jeff endorsed the checks by stamp or in handwriting "C&L Construction Company, Inc.  For Deposit Only."  Jeff then took the endorsed stolen checks to BB&T and deposited the checks using his personal account number instead of the account number for C&L.  Jeff's illegal activity continued until October 2002, when Frank discovered and confronted Jeff about his embezzlement scheme.  In total Jeff embezzled at least $1,052,656.70.  C&L has since sued Jeff and obtained a final judgment of $1,749,496.84 against Jeff.  C&L has recovered $515,608.52 from Jeff.  Additional recovery is problematic.

On March 18, 2004, C&L instituted this action against BB&T.  C&L alleges that BB&T was negligent in depositing the funds into Jeff's account instead of C&L's account.  C&L also alleges that BB&T breached a contract with C&L by depositing the funds into Jeff's account instead of C&L's account and that BB&T converted C&L's checks when it improperly deposited the funds into Jeff's account instead of C&L's account.  C&L has agreed that any damages recoverable in this case would be offset by damages already collected from Jeff.

I.      **Standard of Review**

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ.

---

[1]  C&L originally set up a depository account with One Valley Bank.  BB&T acquired One Valley Bank since then and maintained all of One Valley Bank's old accounts, including C&L's.

P. 56(c).  In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor."  *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position.  *Anderson*, 477 U.S. at 252.

## II.    Analysis

### A.    *Negligence of C&L*

First, BB&T argues that C&L cannot recover because C&L was negligent itself when it allowed Jeff to have sole control of C&L's financial responsibilities.  BB&T claims that the failure of C&L to adopt any internal controls bars any recovery from BB&T.  In other words, BB&T claims that if C&L would have implemented better procedures that provided for review of incoming checks and incoming bank statements, then Jeff's embezzlement would not have occurred.

The court is not persuaded by BB&T's argument.  West Virginia Code § 46-3-206(c) (2004) provides:

-3-

> If an instrument bears an indorsement (i) described in section 4-201 (b) [§ 46-4-201(b)] or (ii) in blank or to a particular bank using the words **"for deposit,"** "for collection," or other words indicating a purpose of having the instrument collected by a bank for the indorser or for a particular account, the following rules apply: . . . (2) A depositary bank that purchases the instrument or takes it for collection when so indorsed converts the instrument unless the amount paid by the bank with respect to the instrument is received by the indorser or applied consistently with the indorsement. (emphasis added).

In this case, checks were presented to BB&T endorsed with the phrase "C&L Construction Company, Inc.  For Deposit Only."  BB&T deposited the checks into Jeff's account and not the account of C&L.  The court **FINDS** that BB&T thereby converted the checks.  Contributory negligence is not a defense to common law conversion.  *See* W. Prosser, Law of Torts § 65, at 426 (1971); *Equitable Life Assurance Society of the United States v. Okey*, 812 F.2d 906 (4th Cir. 1987) (holding that U.C.C. conversion under South Carolina law imposes absolute liability regardless of the claimant's lack of care).

B.      *Contract bars recovery*

Next, BB&T claims that C&L cannot bring a suit against BB&T because a Commercial Bank Services Agreement (CBSA) exists, which imposes a one-year limitation on all claims in B.13 of the CBSA.  BB&T claims that this CBSA controls the instant claim and that C&L lost the claim when it failed to file a complaint before one year had expired after BB&T's error.  C&L denies that the CBSA is a binding contract between C&L and BB&T.  C&L claims that it did not receive or even know about the CBSA so no contract could exist.  C&L further argues that even if the CBSA was binding on C&L, the CBSA does not require a one-year limitation period for this action.

-4-

Even if this court were to rule that the CBSA was binding on C&L,[2] an examination of the language in B.13 of the CBSA reveals that an action for conversion is not covered by that section of the CBSA.   The language in B.13 that refers to the one-year limitation on all claims states:

> Limitation to File Claim.  The Organization agrees that no legal proceeding or action may be commenced against the Bank to recover any amounts **alleged to have been improperly paid out of the account** due to any unauthorized signature or endorsement, any alteration or any other fraudulent or unauthorized transaction unless: (i) the Organization has timely provided the written notices as required above, and (ii) such proceeding or action shall have been commenced within one year from the date the first statement containing the unauthorized transaction was made available to the Organization.  As used herein, a proceeding or action is commenced when the Organization files suit in a court of competent jurisdiction, or if the action is subject to arbitration when the Organization gives the Bank written notice of such action.  Any proceeding or action not brought within one year from the date of the first statement containing the unauthorized transaction was made available to the Organization is forever barred. (emphasis added).

This language indicates that the limitation to filing a claim only refers to those actions "alleged to have been improperly paid out of the account."  In the case at issue, C&L is not alleging that BB&T improperly paid money out of its account.  Rather, C&L alleges that BB&T did not comply with a restrictive endorsement and thereby converted the checks when BB&T failed to credit C&L's account.  As a result, the "Limitation to File Claim" section in B.13 of the CBSA would not be applicable to the case at hand even if this court ruled that the CBSA was a binding contract between C&L and BB&T.  Accordingly, BB&T's argument that the claim is barred by a one-year limitation imposed by the CBSA is without merit.

---

[2]A genuine issue of material fact remains as to whether C&L received the CBSA.  In *National Grange Mut. Ins. Co. v. Wyoming County Ins. Agency, Inc.*, 195 S.E.2d 151, 155 (W. Va. 1973), the court held that testimony by a party that the party did not receive a notice creates an issue of fact that should be decided by the jury. Because C&L produced an affidavit by Frank Moffitt which claims that C&L never received the CBSA, the holding of *National Grange* makes it clear that a question of fact exists as to whether C&L actually received the CBSA.

C.    *Recovery limited by the Statute of Limitations*

Finally, BB&T argues that the statute of limitations bars recovery for all of the transactions that occurred prior to March 18, 2001 (three years before the filing of the case).  Under West Virginia law an action for conversion of a check "must be commenced within three years after the cause of action accrues." West Va. Code § 46-3-118 (2004).  Thus, an examination of West Virginia common law is necessary to determine when a cause of action accrues.  In West Virginia, "[g]enerally the statute of limitations begins to run when a tort occurs; however, under the 'discovery rule,' the statute of limitations is tolled until a claimant knows or by reasonable diligence should know of his claim." *Gaither v. City Hospital*, 487 S.E.2d 901, 906 (W. Va. 1997).  West Virginia has ruled that "[t]he tolling of the statute of limitations under 'the discovery rule' is generally applicable to all torts, unless there is a clear statutory prohibition of its application." *Harris v. Jones*, 550 S.E.2d 93, 98 (W. Va. 2001).  A clear statutory prohibition of the application of "the discovery rule" to U.C.C. conversion cases does not exist.

This court recognizes that a majority of jurisdictions have refused to apply "the discovery rule" to U.C.C. conversion cases;  nevertheless I find that the West Virginia Supreme Court would adopt the minority approach. *See Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434,  445 (7th Cir. 2005) (listing courts that have applied both approaches and giving reasons why particular jurisdictions chose to apply "the discovery rule" and chose not to apply "the discovery rule").  While not explicitly holding that "the discovery rule" applies to U.C.C. conversion cases, the court's holding in *Public Citizen v. First National Bank in Fairmont*, 480 S.E.2d 538 (W. Va. 1996), supports this position.  In *Public Citizen*, Public Citizen, Inc. brought a conversion action against First National Bank in Fairmont for converting checks. *Id.* at 542.  The last alleged conversion that

-6-

occurred was on September 5, 1989. *Id.* Public Citizen did not file suit against First National Bank in Fairmont until October 3, 1992. *Id.* This was more than three years after the alleged last conversion had occurred. The issue of timeliness was resolved in the defendant's favor in the circuit court. *Id.* at 547. The West Virginia Supreme Court reversed the finding of the circuit court and held that the claim was filed timely. *Id.* at 548. The court did not discuss the applicable statute of limitations or "the discovery rule" but did state that the plaintiff "did not file a claim until twenty-three months after learning of the deposit." *Id.* Thereafter, the court ruled that the claim was filed timely. *Id.* The language used by the court indicates that the court in this case looked at "the learning of the deposit" as the applicable time when the statute of limitations should begin to run. In fact, if the court used the time of the conversion as the start of the statute of limitations, the court would have had to rule that the claim was filed untimely. Accordingly, the court in *Public Citizen* implicitly applied "the discovery rule" to a U.C.C. conversion case. As a result, the Supreme Court of West Virginia would apply "the discovery rule" in the case at hand.

This holding does not end the inquiry. In West Virginia, according to "'the discovery rule' the statute of limitation begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know" (1) that the plaintiff has been injured and (2) the identity of the party who caused the injury by committing the intentional tort. *Harris*, 550 S.E.2d at 562. Moreover, "[i]t is for the jury to decide when [the plaintiff] recognized, or through reasonable diligence should have appreciated," that BB&T converted the checks. *Id.* Thus, "the issue of whether a claim is barred by the statute of limitations is a question of fact for the jury." *Id*; *Miami Beach First Nat'l Bank v. Edgerly*, 121 So.2d 417, 420-21 (Fla. 1960) (holding that in a U.C.C. conversion claim, the jury should decide when a reasonable person should have discovered the conversion to determine when

the statute of limitations starts to run).  Accordingly, the court finds that a question of fact remains as to whether the statute of limitations bars any of the individual conversion claims and **DENIES** BB&T's Motion for Summary Judgment.

C&L has not asked the court to hold that BB&T is liable for all conversions occurring after March 18, 2005.  Therefore, the court is unable to make this ruling at this time.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        October 26, 2005

JOSEPH  R.  GOODWIN
UNITED STATES DISTRICT JUDGE